UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2023
```

THE TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT,

       Plaintiff,

-against-

SELECTIVE FIRE AND CASUALTY
INSURANCE COMPANY,

       Defendant.

1:21-cv-2625 (MKV)

**OPINION AND ORDER**

**MARY KAY VYSKOCIL, United States District Judge:**

  Segundo Guarnizo was injured on a job site when he fell off a scaffold. He filed a personal injury lawsuit in New York state court (the "underlying lawsuit"), naming Paragon Restoration Corporation ("Paragon") and various others as defendants. Paragon, in turn, filed a third-party complaint against its subcontractor, Build Logistics, Inc. ("Build"). The question in this case is whether the duty to defend the underlying lawsuit belongs to the insurer for Paragon, which has thus far assumed that task, or whether it is instead owed by the insurer for Build.

  The plaintiff, The Travelers Indemnity Company of Connecticut ("Travelers"), insured Paragon and has been defending Paragon in the underlying lawsuit. Pending before the Court is Travelers' motion for partial summary judgment,[1] asking the Court to declare that the defendant, Selective Fire and Casualty Insurance Company ("Selective"), which insured Build, owes a duty to defend; that the Selective policy provides primary coverage; and that the Travelers coverage is

---

[1] While the plaintiff does not style its motion as one for *partial* summary judgment, that is the effect of the motion, which does not seek summary judgment on the duty to indemnify with respect to claims alleged in the complaint. [ECF No. 1] ("Compl.") at ¶ 5. The defendant, for its part, cross-moves for summary judgment on *all issues*, arguing that "if this Court properly determines that [the defendant] has no duty to defend the putative insureds in the Underlying Action, it is axiomatic that there could never be a duty to indemnify." [ECF No. 23] ("Def. Br.") at 15. Because the Court concludes that the defendant *does* have a duty to defend, however, it need not consider (at this stage) whether the defendant also has a duty to indemnify.

1

excess to that of Selective. Travelers further seeks an award for all sums it has paid thus far in defending the underlying lawsuit. Also pending is the cross-motion by Selective for summary judgment on all issues.

## FACTUAL BACKGROUND[2]

### I. THE PROJECT AND SUBCONTRACT

Segundo Guarnizo was injured while performing work on a construction project at the Moxy Hotel (the "project"). Joint Facts ¶ 8. A number of entities were involved in the project, including: 485 Seventh Avenue Associates LLC ("485 Seventh Avenue"), which owned the hotel; Magnetic Builders Group LLC ("Magnetic"), which was the construction manager for the project; Paragon, which had a subcontract with Magnetic; and Build, which had a subcontract with Paragon. Joints Facts ¶¶ 9-12. The last link in this chain is most relevant for the purposes of this case.

Paragon subcontracted with Build in March 2017. Battisti Decl., Ex. D ("Subcontract") at 1 (pdf pagination). The subcontract provides that Build would work on "brick and cast stone installation," that the work would be completed by April 19, 2017, and that Build would be paid a total of $100,000. Subcontract at 1, 4-5. The subcontract requires that Build name as additional insureds under its commercial general liability policy the "Contractor [Paragon],[3] Owner [485 Seventh Avenue], and all other parties who Contractor is required to name as

---

[2] The facts asserted herein are drawn from the Parties' joint Local Rule 56.1 Statement [ECF Nos. 18, 25] ("Joint Facts"), the Declaration of Brent S. Usery in support of the plaintiff's motion for partial summary judgment and attached exhibits [ECF No. 21] ("Usery Decl."), and the Declaration of Brian L. Battisti in support of the defendant's motion for summary judgment and attached exhibits [ECF No. 24] ("Battisti Decl."). Citations to the Parties' joint Rule 56.1 Statement incorporate by reference the documents cited therein, including the respective insurance policies.

[3] While the subcontract does not define "Contractor," the term clearly applies to Paragon, which signed the final page of agreement under the word "Contractor." Subcontract at 6. There is no dispute between the Parties that Paragon is the Contractor.

additional insureds by any contract." Subcontract at 2. The subcontract further provides that "[c]overage for the additional insureds shall apply as Primary and non-contributing Insurance before any other insurance." Subcontract at 2.

## II. THE UNDERLYING LAWSUIT

Guarnizo was injured when he fell off a scaffold on August 16, 2017. Joint Facts ¶ 8. He brought a personal injury lawsuit in New York State based on theories grounded in negligence. Joint Facts ¶ 5; Compl., Ex. A ("Underlying Compl."). The named defendants included Paragon, Magnetic, and 485 Seventh Avenue (the "tort defendants"). Joint Facts ¶ 6. Guarnizo alleged that the defendants acted negligently by "allowing and permitting the creation, maintenance and continuance of an unsafe, improper, defective and otherwise dangerous condition." Underlying Compl. ¶ 32. In particular, Guarnizo claimed that defendants allowed him to work on the scaffold, which had not been "granted a special approval" and which lacked "sufficient safety railings," without providing him proper safety equipment, such as a harness. Usery Decl., Ex. F, Bill of Particulars ¶ 3.

While Build was not a named defendant, it was not absent from the allegations of the underlying lawsuit. Guarnizo alleged that, at the time of the accident, he was "engaged in the course of his employment as a construction laborer for Build." Underlying Compl. ¶¶ 27, 29. Evidence in support of this allegation was adduced during discovery. For example, Guarnizo testified in his deposition that at the time of the accident he was working for "Freddy," who was the owner of Build. Usery Decl., Ex. G ("Guarnizo Depo.") at 18:17-20:25. Guarnizo further testified that "Mario," who worked for Build, was his foreman on the project; that Mario instructed him on the day of the accident to "take some stones up"; and that Mario did so without providing a safety harness, which he had supplied in the past. Guarnizo Depo. at 30:23-33:5, 37:2-10, 39:8-11.

There also was evidence, however, suggesting that Build's masonry work on the project was completed at the time of Guarnizo's injury in August 2017, and that Guarnizo was working directly for Paragon at that time. This included, among other things, deposition testimony from the owner of Build, who claimed that the work under the subcontract was "probably" completed "in May to April," and that after all work under the scope of the subcontract was complete, Paragon asked to borrow some of Build's workers for continued work on the project. Battisti Decl., Ex. G, ("Magalhaes Depo.") at 20:2-5; 21:25-20:2-13.

In any event, Guarnizo could recover from Build only by filing a claim for workers' compensation with the State of New York Workers' Compensation Board (the "Board"). *See Weiner v. City of New York*, 19 N.Y.3d 852, 854, 970 N.E.2d 427, 428 (2012) ("Workers' compensation benefits are the sole and exclusive remedy of an employee against his employer for injuries in the course of employment." (internal quotation marks omitted)). After doing so, the Board determined that Build employed Guarnizo on the day of the accident and, as a result, Build was required to provide Guarnizo with certain benefits. Joint Facts ¶ 17; Usery Decl., Ex. H ("Comp. Decision") at 2.

With respect to the underlying lawsuit, Paragon filed a third-party complaint against Build, seeking indemnification for any recovery by Guarnizo. To support this claim, Paragon alleged that the "place of occurrence complained of by [Guarnizo] was under the maintenance [and] management of [Build]," and that the subcontract between Paragon and Build was still in effect at the time of the accident. Joint Facts ¶ 7; Usery Decl., Ex. E ("Third Party Compl.") at 6-7. The issues raised in the third-party complaint (concerning indemnification) intersect with those at the heart of a separate but related question: which insurer has a duty to defend the tort defendants in the underlying lawsuit?

4

### III. THE INSURANCE DISPUTE

This case concerns two insurance policies. Travelers insured Paragon under a Commercial Insurance policy. Joint Facts ¶ 24. Pursuant to this policy, Travelers provided a defense in the underlying lawsuit for Paragon, its insured, as well as for Magnetic and 485 Seventh Avenue, its additional insureds. Joint Facts ¶ 26. However, Travelers maintained throughout that the duty to defend was rightfully owed by Selective, which provided commercial liability insurance to Build. Joint Facts ¶ 22. Specifically, Travelers maintained that Selective owed a duty to defend the tort defendants in the underlying lawsuit because those defendants each qualified as additional insureds under the terms of the Selective policy, which Travelers contends operates primary to the Travelers policy.

The Selective policy has two provisions on additional insureds. One provides that additional insureds include "any person or organization whom [Build has] agreed in a written contract . . . be added as an additional insured on [Build's] policy," and that "[s]uch person or organization is an additional insured only with respect to liability for 'bodily injury' . . . *caused, in whole or in part, by* . . . [Build's] ongoing operations." Battisti Decl., Ex. C ("Selective Policy") at 97 (emphasis added). The other provision is effectively the same, except that it applies "only with respect to liability *arising out of* [Build's] ongoing operations." Selective Policy at 103 (emphasis added). The coverage provided to additional insureds is primary and non-contributory with any other insurance issued to that additional insured when Build agrees to as much in a "written contract or agreement." Selective Policy at 97. According to Travelers, that is precisely what Build did in its subcontract with Paragon, which required that Build name as additional insureds under its commercial general liability policy the "Contractor, Owner, and all other parties who Contractor is required to name as additional insureds by any contract." Subcontract at 2.

5

Both the Travelers policy and the Selective policy provide coverage for bodily injury that takes place during the policy period and is caused by an accident.  Selective Policy at 97; Usery Decl., Ex. A, ("Travelers Policy"), Part 1 of 4, at 14.  Under both policies, the insurers have a duty to defend the insured against any suit seeking damages for a covered injury.  Selective Policy at 69; Travelers Policy, Part 1 of 4, at 20.

By letter dated September 22, 2017, Travelers tendered the defense in the underlying lawsuit to Selective.  Joint Facts ¶ 27.  Selective denied that tender.  Joints Facts ¶ 28.  On September 5, 2018, Travelers renewed its tender to Selective.  Joint Facts ¶ 29.  Selective again denied the tender and refused to defend the underlying lawsuit.  Joint Facts ¶ 30.  As a result, Travelers has been providing a defense to the tort defendants in the underlying lawsuit and incurring all associated costs, Usery Decl. ¶ 11, which, according to the Declaration of Brent S. Usery, amount to $115,506.02.  Usery Decl. ¶ 12.

## PROCEDURAL HISTORY

Travelers filed this lawsuit [ECF No. 1] ("Compl.") seeking a declaration that: (a) Selective owes the tort defendants both a duty to defend and a duty to indemnify in the underlying lawsuit; and (b) the Selective policy provides primary coverage with respect to the underlying lawsuit, while the Travelers policy provides excess coverage.  Compl. ¶ 41.  Travelers further seeks a damages award for all sums it has paid to defend the tort defendants in the underlying lawsuit.  Compl. ¶ 42.

Discovery is completed and Travelers moved for summary judgment on all claims brought in its complaint, with the exception of its claim for a declaration that Selective owes a duty to indemnify in connection with the underlying lawsuit. [ECF Nos. 19, 20].  Selective opposed the motion [ECF No. 27], and Travelers replied [ECF No. 28].  Selective cross-moved

for summary judgment on all claims brought in this case. [ECF Nos. 22, 23]. Travelers opposed the motion [ECF No. 26], and Selective replied [ECF No. 29].

## LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence, and . . . must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

Under New York law,[4] the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (citation omitted). "Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." *Lantheus Med. Imaging, Inc. v. Zurich American Ins. Co.*, 650 F. App'x 70, 71 (2d Cir. 2016) (quoting *In re Estates of Covert*, 97 N.Y.2d 68, 76, 761 N.E.2d 571 (2001)).

## DISCUSSION

The cross-motions for summary judgment present the following issues: (I) whether Selective owes a duty to defend the underlying action; (II) whether the Selective policy provides primary coverage in connection with the underlying lawsuit, and, as a corollary, whether the coverage provided by Travelers is excess to that of Selective; and (III) whether Travelers is entitled to an award for all sums it has paid in defense of the underlying action. The answer to

---

[4] The Court applies New York law, which the Parties' briefs treat as controlling. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

the first issue proves dispositive in resolving the latter two, since Selective does not dispute that if it owes a duty to defend, its coverage is primary and, as such, it is obligated to reimburse Travelers for all costs expended in defense of the underlying action.

Selective contends that the answer to the issues framed by the Travelers motion is no. Specifically, Selective argues that its policy could not possibly have been triggered because Build's operations on the project were completed by the time of the accident and thus (i) the subcontract between Build and Paragon was no longer in effect at that time, and (ii) even if the subcontract had been in effect, there would still be no coverage for the additional insureds because Guarnizo's injury was not caused by (nor did it arise out of) Build's "ongoing operations."

## I. The Duty to Defend

"An insurer's duty to defend its insured is exceedingly broad." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 15 N.Y.3d 34, 37, 930 N.E.2d 259 (2010) (internal quotation marks omitted). The duty arises "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 476 N.E.2d 272 (1984). An insurer may terminate the duty to defend by obtaining a declaratory judgment of no coverage. *See* Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 5.05[a] (21st ed. 2022). As a general rule, however, a declaratory judgment is proper "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." *Seaboard*, 64 N.Y.2d at 312.

"This standard applies equally to additional insureds and named insureds." *Regal Constr.*, 15 N.Y.3d at 37. "Additional insured" is a recognized term in insurance contracts,

8

which refers to an "entity enjoying the same protection as the named insured." *Pecker Iron Works v. Travelers Ins. Co.*, 99 N.Y.2d 391, 393, 786 N.E.2d 863 (2003) (internal quotation marks omitted). The central dispute in this case is whether the tort defendants qualify as additional insureds under the Selective policy such that Selective must defend them in the underlying lawsuit. Pursuant to the Selective policy, a person or organization can qualify as an additional insured only if Build agreed "in a written contract" to include the person or entity as an insured under its liability insurance. Selective Policy at 97, 103.

The focus here is the subcontract between Build and Paragon. That agreement required Build to name as additional insureds on its commercial general liability policy the "Contractor, Owner, and all other parties who Contractor is required to name as additional insureds by any contract." Subcontract at 2. There is no genuine dispute that Paragon is the Contractor; that 485 Seventh Avenue is the Owner; or that Paragon is required to name Magnetic as an additional insured pursuant to their own subcontract.[5] Subcontract at 6; Joint Facts ¶ 9; Usery Decl., Ex. C, Magnetic Subcontract at 51-52. As a result, all three of the tort defendants clearly satisfy the threshold requirement for qualifying as additional insureds. But that does not end the analysis.

The Selective policy provides that any person or organization which satisfies the initial requirement "is an additional insured *only with respect* to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [Build's] ongoing operations."[6] Selective Policy at 97 (emphasis

---

[5] Selective argued in its opening brief, without offering any reasoning or support, that "the subcontract agreement does not require Build to name Magnetic or 485 Seventh Ave. as additional insureds." [ECF No. 23] ("Def. Br.") at 14. However, Travelers clearly explained in its opposition why that position was mistaken (*i.e.*, that 485 Seventh Avenue owns the Moxy Hotel, and that Paragon is required to name Magnetic as an additional insured pursuant to their own subcontract), [ECF No. 26] ("Pl. Opp.") at 8-9, and Selective then appeared to abandon the argument by eliding any mention of it in reply.

[6] As discussed in the background section, a different provision in the Selective policy provides that any person or organization which satisfies the threshold requirement qualifies as an additional insured "only with respect to liability *arising out of* [Build's] ongoing operations." Selective Policy at 103 (emphasis added). It is true, of course, that liability which "aris[es] out of" certain operations is not the same as liability which is "caused, in whole or in part, by" those operations. *See Regal Const.*, 15 N.Y.3d at 38 (explaining that when the policy contains the phrase

9

added). Travelers argues that this condition is satisfied because Guarnizo was employed by Build at the time of his injury, and because he was performing work that fell within the scope of the subcontract between Build and Paragon. Selective, by contrast, contends that Build had *completed* its work and obligations under its subcontract as of June 2017 and that, as a result, the subcontract was no longer in effect at that time of the accident in August 2017, and, even if it were in effect, Build had no "ongoing operations" which could have "caused" the accident.[7]

To resolve this dispute, the Court first considers the allegations in the underlying complaint. New York law is clear that if "any of the claims against [an] insured *arguably* arise from covered events, the insurer is required to defend the entire action." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443, 779 N.E.2d 169 (2002) (alteration in original) (emphasis added) (quoting *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 690 N.E.2d 866 (1997)). Here, Guarnizo alleged in the underlying complaint that he was working for Build, a subcontractor of the tort defendants, at the time that he was injured. Underlying Compl. ¶¶ 27, 29. While Guarnizo did not make any specific allegations of negligence with respect to Build—which is unsurprising given that New York Workers' Compensation Law precluded Guarnizo from naming Build as a defendant, *see* Workers' Compensation Law §§ 11, 29(6)—Travelers argues that the allegation regarding employment status creates at least the *possibility* that Guarnizo's injury was caused, in whole or

---

"'arising out of' . . . the focus of the inquiry is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained" (internal quotation marks omitted)). But that distinction makes no difference in this case, where the parties disagree only with respect to whether Build had any "ongoing operations" at the time of the injury, which is a prerequisite that applies to both provisions. There is no dispute that if Build had any ongoing operations at the time of the accident, it is at least possible that Guarnizo's injury was caused by, or arose out of, those ongoing operations.

[7] Both arguments presented by Selective—*i.e.*, that the subcontract was not in effect at the time of the accident, and that the accident could not have been caused by Build's ongoing operations—rest on precisely the same issue: whether Build was acting pursuant to its subcontract with Paragon at the time of the accident. As a result, both arguments can be resolved in tandem.

10

in part, by Build's ongoing operations.  *See Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 612-13 (S.D.N.Y. 2017) (finding that the allegations that the plaintiff in the underlying action "was an employee of [the insured], and that he was injured on the Project Site . . . clearly frame the potential for liability").

Selective does not engage with the allegations in the underlying complaint, effectively conceding that those allegations, viewed in isolation, create the possibility of coverage.  Instead, Selective argues only that the allegations related to Build are *belied by extrinsic evidence*, which, according to Selective, makes clear that Build had no ongoing operations at the time of the accident.  Based on this evidence, Selective seeks a declaration that the claim is outside the scope of the additional insureds coverage and, as a result, it has no obligation to the tort defendants to defend or to indemnify.  But this puts the cart before the horse.  It is hornbook law that "[e]ven where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 66, 575 N.E.2d 90 (1991).  Selective cannot simply bypass the allegations in the underlying complaint.

To the extent extrinsic evidence can be considered at all under New York law,[8] an insurer could only disclaim its duty to defend based on such evidence "where the evidence offered . . . allow[s] a court to *eliminate the possibility* that the insured's conduct falls within coverage of the policy." *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004) (internal quotation marks omitted); *see also Travelers Prop. Cas. Co. of America v. Harleysville Ins. Co.*

---

[8] The Second Circuit has acknowledged that "New York law is 'unclear' regarding the circumstances in which a court may consider extrinsic evidence in making coverage determinations." *Stein v. N. Assur. Co. of America*, 617 F. App'x 28, 31 n.4 (2d Cir. 2015) (quoting *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 n.4 (2d Cir. 2004)).  This Court need not resolve that matter of New York law, however, because the extrinsic evidence, even if properly considered, does not get Selective where it needs to go.

11

*of New York*, 67 Misc. 3d 1227(A), 128 N.Y.S.3d 154 (N.Y. Sup. Ct. 2020) (finding it improper to consider extrinsic evidence because "[t]he extrinsic evidence does not enable the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy"). This is a high burden of proof, and one which rests with Selective. *See Stein v. N. Assur. Co. of America*, 617 F. App'x 28, 31 (2d Cir. 2015) ("[C]onsideration of extrinsic evidence, to the extent it is appropriate to do so under New York law, does not alter our conclusion that insurers have failed to meet their burden for disclaiming coverage.").

To support its claim that Build had no ongoing operations at the time of the accident, Selective has pointed to invoices from the project, which show that the final payment from Paragon to Build was for work performed on June 26, 2017. Battisti Decl. Ex. H. Selective also has highlighted deposition testimony from the owner of Build, who claimed that the work under the subcontract was "probably" completed "in May to April," and that after all work under the scope of the subcontract was complete, Paragon asked Build to borrow some of its workers, who continued to work on the project site. Battisti Decl., Ex. G, ("Magalhaes Depo.") at 20:2-5; 21:25-20:2-13. Ultimately, this evidence may relieve Selective of any indemnity obligation to the tort defendants; however, there is evidence on the other side of the ledger too. Specifically, Guarnizo testified that he was employed by Build at the time of the accident, and that it was a foreman for Build who instructed him to ascend the scaffold without a safety harness. Guarnizo Depo. at 18:17-20:25, 30:23-33:5, 37:2-10, 39:8-11.

This mix of evidence precludes the Court from finding (at this stage) that there is *no possibility* that the Selective policy covers the tort defendants in connection with the underlying lawsuit. The Court thus concludes that the underlying complaint, which alleges that Guarnizo

was employed by Build at the time of his accident, is sufficient to trigger a duty for Selective to defend the tort defendants, as well as Build, in the underlying lawsuit.

## II.     Primary and Excess Coverage

There can be no dispute that Travelers also owes a duty to defend. Travelers Policy, Part 1 of 4, at 20. But while Travelers and Selective both have a duty to defend and both cover the same risk, Travelers contends that the Selective policy provides primary coverage in connection with the underlying lawsuit, and that the Travelers coverage is excess to that of Selective. In support, Travelers notes that the Selective policy provides "primary" insurance to an additional insured when Build has "agreed in a written contract . . . to include that additional insured on [its] General Liability policy on a primary and/or non-contributory basis." Selective Policy at 104. Travelers then argues that this provision in the Selective policy is triggered by the subcontract between Build and Paragon, which provides that "[c]overage for the additional insureds shall apply as Primary and non-contributing Insurance before any other insurance . . . provided to . . . the additional insureds." Subcontract at 2. Travelers contrasts this language to that contained in its own insurance policy with Paragon, which provides that the insurance "is excess over any of the other insurance, whether primary, excess, contingent on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy." Travelers Policy, Part 2 of 4, at 4.

Despite Travelers devoting an entire section of its brief to this issue, which spanned multiple pages, Selective failed to address this argument in its opposition, arguing only that Selective owes no coverage at all. Selective has thus conceded the priority of coverage issue through silence, leading the Court to conclude that the Selective policy is primary to the coverage provided by Travelers. *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 216 n.2 (S.D.N.Y. 2021) ("Plaintiff's briefing fails to respond to Defendants' arguments in favor of the dismissal of

his vagueness and money damages claims, and the Court will thus consider those claims conceded."); *In re UBS AG Secs. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address).

### III.     Reimbursement of Defense Costs

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474 (1st Dep't 2013) (internal quotation marks omitted).  To date, Selective has refused to defend the tort defendants in the underlying lawsuit and must therefore reimburse Travelers "for the defense costs (including reasonable attorneys' fees and costs) it has incurred providing that defense." *Arch Specialty*, 238 F. Supp. 3d at 616.

Travelers asserts, through the affidavit of Brent S. Usery, that it has incurred attorneys' fees and related defense costs totaling $115,506.02.  Usery Decl. ¶ 12.  However, beyond this affidavit, Travelers has provided no documentary evidence of the defense costs it has actually incurred.  Even if the figure were supported, it is almost certainly stale, given that Travelers has continued to provide a defense and incur costs in the underlying lawsuit.  Having concluded that Travelers is entitled to reimbursement from Selective, which provides primary coverage, it appears an inquest on damages will be necessary unless the Parties can reach agreement with respect to the amount of defense costs owed.

### CONCLUSION

For the reasons discussed above, the Court grants the motion by Travelers for partial summary judgment, and denies the cross-motion by Selective.  The Court declares that Selective is obligated to defend the tort defendants in the underlying lawsuit, that the Selective policy

provides coverage primary to that afforded by Travelers with respect to the underlying lawsuit, and that Travelers coverage is excess to that of Selective.  The Court also holds that Travelers is entitled to reimbursement of the post-tender defense costs it has incurred to date.  The Court will issue a separate order with respect to an inquest on the amount of damages.

      The Clerk of Court respectfully is requested to close the pending motions at ECF Nos. 19 and 22.  By April 27, 2023, the Parties shall submit to the Court a joint letter proposing next steps in this case.

**SO ORDERED.**

**Date:   March 27, 2023**
       **New York, NY**

                                                 **MARY KAY VYSKOCIL**
                                                 **United States District Judge**